UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

———————————————————————————

RICARDO L. GABINO,

        Petitioner,

v.                                                               Case No. 08-CV-850

MICHAEL A. DITTMANN, Warden,
Kettle Moraine Correctional Institution

        Respondent.

———————————————————————————

## ORDER

On October 10, 2008, the petitioner, Ricardo Gabino ("Gabino"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2004 conviction for two counts of hit and run involving great bodily harm and two counts of causing great bodily harm by intoxicated use of a motor vehicle. Gabino's petition contains two grounds for relief. First, Gabino argues that he is entitled to relief because he was denied his right against self incrimination in violation of the Fifth Amendment to the United States Constitution. Second, the petitioner contends that he is entitled to relief because he was denied his Sixth Amendment right to a jury trial.

Before considering Gabino's petition, the court notes that on June 6, 2009, the petitioner made a "renewed motion" with the court to appoint counsel to assist him in this case. (Docket #21). However, the court already ruled on Gabino's motion to appoint counsel on December 15, 2008, denying the petitioner's request. (Docket #6). The court will treat Gabino's "renewed motion" as a motion for reconsideration

under Fed. R. Civ. P. 54(b), which provides that "any order or other form of decision . . . which adjudicates fewer than all the claims . . . is subject to revision at any time before the entry of judgment adjudicating all the claims." A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). In the present case, the petitioner does not assert that this court's order of December 15, 2008, contains a manifest error of law and he has not presented newly discovered evidence to support his motion. The petitioner instead parrots the same arguments he made in his original motion, which the court already rejected. As such, the court will deny Gabino's renewed motion to appoint counsel and will proceed to review the merits of Gabino's petition.

## BACKGROUND

The petitioner's underlying conviction arose from an incident that occurred on August 24, 2003. On that day, a group of motorcyclists were traveling down state Highway 36 outside of Lyons, Wisconsin, when a red colored pickup truck, attempting to pass the motorcycles, careened into one of the vehicles. The two people on the motorcycle that was struck suffered serious injuries, including broken bones and severe lacerations on their skin. The red pickup truck temporarily swerved to the side of the highway into a soybean field. The truck, smoldering from the impact of the accident, drove for a short period in the soybean field and then

-2-

moved back onto the road where the truck sped off from the scene of the incident. One car, upon seeing the accident, followed the red truck into the town of Lyons. The truck, leaking fluids and smoking, finally stopped in the town of Lyons, three miles from where the truck struck the motorcycle. Soybean stalks were hanging from the front of the vehicle. The petitioner exited the vehicle, but was immediately detained by citizens who had gathered around the disabled truck. Soon after, police arrived at the scene, and upon smelling the strong odor of intoxicants on Gabino, the police handcuffed the petitioner, arrested him for a hit and run, and placed him in the back of a locked squad car. At this point, the police had not yet read Gabino his *Miranda* rights.

After Gabino was placed in the squad car, a police deputy, Gerald Post Jr. (Post), began talking to the petitioner. Post informed Gabino that he was investigating the possibility of an alcohol-related offense regarding the accident and was deciding whether or not to arrest Gabino for operating a vehicle while intoxicated. The petitioner replied that he "only had three beers." The police opted to take Gabino to the hospital for testing. As the police car drove, Post subsequently asked Gabino whether he had been drinking after the accident, whether he was aware that he struck another vehicle, and whether he was the driver of the vehicle, to which the petitioner gave several incriminating responses. Post then took Gabino to the hospital where Gabino's blood was taken for testing.[1] At the hospital, for the

---

[1] The results of the two blood tests were a .186 blood alcohol concentration and .169 blood alcohol concentration.

first time, the police gave Gabino his *Miranda* warnings. The petitioner refused to answer questions regarding an alcohol influence report form, but continued to talk to Post, making several more incriminating statements regarding his responsibility for the accident.

The petitioner was subsequently charged with two counts each of causing great bodily harm by operating a motor vehicle while intoxicated, causing great bodily harm by operating a motor vehicle with a prohibited blood alcohol concentration, and hit and run involving great bodily harm, in violation of Wis. Stat. § 940.259(1m)(b). Before trial, Gabino moved to suppress the statements he made to Post when initially stopped in the town of Lyons, the statements the petitioner made in the police car on the way to the hospital, and the comments Gabino made to Post at the hospital. The trial court suppressed the statements Gabino made in the squad car, but allowed the prosecution to use the other statements.

At trial, the State introduced in their case-in-chief as evidence of Gabino's guilt the testimony of several witnesses, medical and police reports, and the incriminating statements Gabino made at the hospital to Post. The petitioner argued in his defense that he was not the person driving the truck at the time of the accident and that, instead, a mysterious person named "Jamie" was the driver of the car at the time of the accident and had subsequently jumped out of Gabino's truck after the incident, with the petitioner seamlessly taking over the wheel and driving the car into the town of Lyons without slowing down the car. The jury, apparently finding the

petitioner's story implausible, found Gabino guilty of all of the charges against him. The trial court only sentenced the petitioner for two counts of hit and run involving great bodily harm and two counts of causing great bodily harm by intoxicated use of a motor vehicle; Gabino was not sentenced for two counts of causing great bodily harm by operating a motor vehicle with a prohibited blood alcohol concentration.

Post his conviction, Gabino exercised his right to appeal his case to both the Wisconsin Court of Appeals and the Wisconsin Supreme Court. However, Gabino could not convince either court that a procedural error marring his conviction necessitated reversal of the trial court's sentence. On October 10, 2008, the petitioner filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, the legal merits of which the court will now discuss.

## DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant a habeas corpus application arising from a state court adjudication on the merits if the state court's decision: (1) "was contrary to"; or (2) "involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" federal law if "it applies the wrong standard or decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts." *Morgan v. Calderone*, No. 08-2355, 2009 U.S. App. LEXIS 26778, at *4-5 (7th Cir. Dec. 9, 2009). Moreover, a state court's decision is an

-5-

Case 2:08-cv-00850-JPS   Filed 01/21/10   Page 5 of 14   Document 27

"unreasonable application of clearly established federal law" if it "correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case." *Woods v. Schwartz*, No. 08-1234, 2009 U.S. App. LEXIS 26802, at *21-22 (7th Cir. Dec. 9, 2009). In other words, if the petitioner challenges a state court's application of governing federal law, the decision "must be shown to not only be erroneous, but objectively unreasonable." *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009) (internal citations omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold"). With these standards in mind, the court proceeds to examine each of the claims in Gabino's petition.

### A. Fifth Amendment Argument

Gabino first argues that the state court unreasonably applied clearly established federal law when the court refused to suppress: (1) the petitioner's initial statement to investigators that he only "drank three beers"; and (2) the petitioner's statements he made at the hospital to police after he was read his *Miranda* rights, violating the Fifth Amendment as incorporated through the Fourteenth Amendment to the United States Constitution. *Malloy v. Hogan*, 378 U.S. 1, 8 (1964). The Supreme Court has interpreted the Fifth Amendment to mean that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural

-6-

safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona,* 384 U.S. 436, 444. As such, a suspect who is "subject to custodial[2] interrogation[3] has the "right to remain silent," the right to "consult with an attorney and to have counsel present during questioning, and . . . the police must explain this right to him [or her] before questioning begins." *Davis v. United States*, 512 U.S. 452, 457 (1994). "Where a required *Miranda* warning has been given," a suspect's incriminating statement "is suppressed to protect the Fifth Amendment right of silence only if a reasonable officer should have been certain that the suspect expressed the unequivocal election of the right." *Texas v. Cobb*, 532 U.S. 162, 176 (2001). An "ambiguous invocation of the right to remain silent does not require that the police cease all questioning." *United States v. Banks*, 78 F.3d 1190, 1197 (7th Cir. 1996) (vacated on other grounds by *Mills v. United States*, 519 U.S. 990, 117 S. Ct. 478, 136 L. Ed. 2d 373 (1996)). If a suspect's statement is not sufficiently clear, law enforcement officers do not have an obligation to stop the interrogation or to clarify the accused's ambiguous statement. *Davis*, 512 U.S. at 459. Ultimately, a *Miranda* violation prevents the introduction of a particular statement in the prosecution's *case-in-chief*. *Winsett v. Washington*, 130 F.3d 269, 277 (7th Cir.

---

[2] An individual is considered "in custody" when his or her movement is restrained to the degree comparable to a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983).

[3] Interrogation is defined as "any words or actions on the part of the police (other than those normally attendant to arrest and questioning) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

-7-

1997). Nonetheless, prosecutors can still use a statement as impeachment material unless it was made involuntarily.[4] *Harris v. New York*, 401 U.S. 222, 225-26 (1971).

Here, the state court did not act unreasonably in not suppressing the two sets of statements from Gabino. Initially, the court notes that the prosecution only used the statements Gabino made in the hospital in their case-in-chief against the petitioner. The exculpatory statement by Gabino that he only consumed "three beers" was exclusively used by the prosecution in rebuttal to the petitioner's testimony, and, as such, is not subject to suppression under the rule of *Miranda* unless the statement was made involuntarily. *Harris,* 401 U.S. at 225-26. Gabino presents no argument for why his initial statements were the product of coercive police tactics, and, as such, the court finds that the state court did not err by allowing the prosecution to use the petitioner's statements for impeachment purposes.

The petitioner argues that he unequivocally invoked his right to remain silent when he was at the hospital, and, therefore, any incriminating statements Gabino made after his invocation of his rights should have been suppressed as evidence by the state trial court. However, the only statement Gabino cites as his "unequivocal" invocation of his rights was his statement "I do not want to answer those questions" in response to a request for him to fill out an alcohol influence report. It was reasonable for the state court to conclude that Gabino's statement referred to his

---

[4] A statement is made "involuntarily" if it is the product of "coercive police activity." *Colorado v. Connelly,* 479 U.S. 157, 167 (1986). "A confession is voluntary if, in the totality of circumstances, it is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir.2001)

-8-

unwillingness to fill out the form presented to him and was not a general demand to discontinue all discussions with the police, especially given that Gabino continued to engage with Deputy Post after he made his statement about the form. Law enforcement officers are not required to terminate an interrogation unless the invocation of the right to remain silent is unambiguous, and no such invocation occurred here. *See United States v. Sherrod*, 445 F.3d 980, 982 (7th Cir. 2006) ("A suspect telling a police officer that he's 'not going to talk about nothin'' is as much a taunt – even a provocation--as it is an invocation of the right to remain silent. When Sherrod wanted to end the interview, he knew how to do it unambiguously. He didn't do so before he uttered his statements.") Moreover, it is well established that a suspect's refusal to answer certain questions during an interrogation does not necessarily constitute an invocation of the right to remain silent. *United States v. Jumper*, 497 F.3d 699, 705-06 (7th Cir. 2007). At most, Gabino invoked his right to remain silent with respect to the filling out questions on the form and nothing else.

Finally, the state appeals court's finding that any error by the Wisconsin circuit court in failing to suppress the statements the petitioner made at the hospital was harmless was not "objectively unreasonable." *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the [state court] applied harmless-error review in an "objectively unreasonable" manner.") At trial, Gabino only contested the issue of

-9-

whether he was the one who drove the truck that struck the motorcycle, contending that a stranger drove the truck during the accident while Gabino sat in the passenger's seat. Overwhelming evidence, excluding Gabino's statements, indicated that the petitioner was the only person driving the red truck involved in the accident; four witnesses at the scene of the accident testified that just one person was in the red truck, while several other witnesses testified that only one person was in the red truck after it fled from the scene of the crime into Lyons, Wisconsin. Gabino presented no evidence other than his own testimony to refute the prosecution's case.[5] As such, even assuming that the statements made by Gabino at the hospital were erroneously admitted, the state court was not objectively unreasonable in finding such an error harmless. The court proceeds to examine Gabino's next argument for why the court should grant his petition.

**B. Sixth Amendment Argument**

Gabino argues that he is entitled to habeas relief because the state court denied his right to trial by jury, as guaranteed by the Sixth Amendment, as incorporated through the Fourteenth Amendment, to the Constitution. *Duncan v. Louisiana*, 391 U.S. 145, 162 (1968). The Sixth Amendment requires that a criminal conviction rest upon a jury determination that the "defendant is guilty of every

---

[5] Gabino argues that the error of not suppressing his statements forced him to take the stand to defend himself, making the error non-harmless. However, there is no reason to believe that the error complained of contributed to the verdict, as overwhelming evidence beyond Gabino's statements indicated he was guilty of the underlying charges. Moreover, the record indicates that when Gabino did take the stand he did not repeat the damaging statements made by him at the hospital, but rather he attempted to contradict those statements. As such, the state court was not objectively unreasonable in concluding that harmless error occurred.

-10-

element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 522-523 (1995). Gabino contends that he was denied his right to a jury trial when the court instructed the jury to take, as proven, stipulations as to: (1) Gabino's blood alcohol level; and (2) the amount of injuries the victims sustained.

However, even assuming that Gabino did not personally waive his right to a jury trial on the issues of the petitioner's blood alcohol level and the extent of the victim's damages, the court finds that any error that occurred was harmless. On the Sixth Amendment issue, the Court of Appeals of Wisconsin did not consider the issue of harmless error because it concluded that there was no error on the part of the trial court. As such, there is no state court ruling on this issue to which the court owes deference, and the court is free to "dispose of the matter as law and justice require." *Lopez v. Thurmer,* 573, F.3d 484, 496 (7th Cir. 2009). What the law requires when examining whether harmless error occurred is clear: for the purposes of habeas review, a constitutional error is harmless only if it "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 6737-38 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 121 (2007) ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht*"); *cf. Chapman v. California,* 386 U.S. 18, 24 (1967) (holding that a court on direct review should find constitutional error is

harmless only when "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'") None of the supposed errors Gabino complains of rise to the level of having had "a substantial and injurious influence" on his criminal verdict.

Gabino first argues that he was denied the right of trial by jury on the issue of his blood alcohol level at the time of the incident, in that his defense attorney stipulated to the results of his two blood tests. However, while Gabino was charged with and found guilty of both: (1) causing great bodily harm by use of a motor vehicle with a prohibited blood alcohol level; and (2) causing great bodily harm by intoxicated use of a motor vehicle, Gabino, per Wis. Stat. § 940.25(1m)(b), was only convicted and sentenced for the latter crime. The record does not support the conclusion that the stipulation had a "substantial and injurious effect or influence" on the jury's conclusion that Gabino was intoxicated at the time of the accident. The jury was never told that the stipulated level of alcohol in Gabino's blood required a finding that the petitioner was intoxicated at the time of the accident.[6] In fact, a plethora of evidence, beyond Gabino's blood alcohol level, demonstrated his guilt, including Gabino's own statements, the testimony of witnesses who saw the petitioner exit his vehicle, and the testimony of the police who smelled alcohol on Gabino's breath, prompting the initial investigation of the crime. There is no reason

---

[6] The court "assumes that the jury obeys the judge's instructions." *Pomer v. Schoolman,* 875 F.2d 1262, 1265 (7th Cir. 1989).

-12-

to believe that had the fact of Gabino's blood alcohol level not been stipulated to that the verdict would have been any different.

The petitioner also argues that he was denied the right of trial by jury because his defense attorney did not contest that the injuries the two motorcycle riders suffered constituted "great bodily harm" per Wis. Stat. § 940.25(1m)(b). Wisconsin broadly defines "great bodily harm" as "bodily injury which creates a substantial risk of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury" or "other serious bodily injury." Wis. Stat. § 939.22(14). Here again, the record amply demonstrates that the two motorcyclists suffered injuries meeting the requirements for "great bodily harm." One victim of the accident was left with severe gashes on her head and face, four broken teeth, road rash over her entire body, and a broken left fibula. The other victim had two of his vertebrae fractured, a broken wrist, hip, and ankle. The petitioner did not cross-examine the victims or contest any of the medical findings. The court can conclude without hesitation that the petitioner being denied the right to contest whether the accident victims suffered "great bodily harm" did not have anywhere close to a "substantial and injurious effect or influence on the jury's verdict." As such, the supposed denial of the petitioner's right to trial by jury on all of the elements of the crimes to which he was convicted does not warrant that this court should provide him

-13-

Case 2:08-cv-00850-JPS   Filed 01/21/10   Page 13 of 14   Document 27

with habeas relief. The state court's decision in this case was not objectively unreasonable, and Gabino's petition will be denied.

Accordingly,

**IT IS ORDERED** that Gabino's renewed motion to appoint counsel (Docket #21) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the Gabino's petition for a writ of habeas corpus (Docket #1) be and the same is hereby **DENIED**.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of January, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge